IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CONSUMER DATA INDUSTRY
ASSOCIATION,

    Plaintiff,

vs.                                                            No. 10-Civ-458 MCA/WDS

GARY K. KING, in his official
capacity as ATTORNEY GENERAL
FOR THE STATE OF NEW MEXICO,

    Defendant.

## ORDER

This matter is before the Court upon its March 9, 2011 Order to Show Cause [Doc.41] and the parties' respective responses to the OSC. [Doc. 44; 45] Having considered the parties' responses and the pertinent law, and otherwise being fully informed, the Court concludes that Plaintiff has failed to demonstrate redressability, an essential element of Article III standing. Accordingly, the injunction previously entered by the Court is dissolved and the complaint and this action are dismissed for want of jurisdiction.

**BACKGROUND**

Plaintiff, Consumer Data Industry Association ("CDIA"), is an international trade association whose members are consumer credit reporting agencies such as Experian, Equifax,

and Trans Union.[1]  CDIA's members are subject to federal regulation pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

In 2010, the New Mexico Legislature enacted the Fair Credit Reporting and Identity Security Act, 2010 N.M. Laws, ch. 54 ("the FCRISA").  The FCRISA was signed by then Governor Bill Richardson, and by operation of law, N.M. Const., art. IV, § 23, became effective on May 19, 2010.  The FCRISA is codified at NMSA 1978, §§ 56-3A-1 through -6.  Subsections 3(D) & (E) [NMSA 1978, § 56-3A-3(D) & (E)] impose certain duties on CDIA's members that CDIA maintains are pre-empted by the federal Fair Credit Reporting Act.  In addition, FCRISA § 6 provides for civil enforcement through the following remedies:

> If a consumer reporting agency violates the provisions of the Fair Credit Reporting and Identity Security Act, the affected consumer or the attorney general may bring a civil action against the consumer reporting agency for:
>
> A.    injunctive relief to prevent further violation of the Fair Credit Reporting and Identity Security act;
> B.    any actual damages sustained by the consumer as a result of a violation of the Fair Credit Reporting and Identity Security act;
> C.    a civil penalty in an amount not to exceed two thousand dollars ($2,000) for each violation of the security freeze or each violation of the provisions of Subsection D of Section 3 of this 2010 Act; and
> D.    costs of the action and reasonable attorney fees.

CDIA filed the instant action on May 15, 2010, a few days before the effective date of the FCRISA.  In its complaint, CDIA alleged that its members would be irreparably harmed by enforcement of FCRISA § 3(D) & (E) because its members must choose between (1) complying with the FCRISA, in which case they will incur the administrative costs of developing and

---

[1] For purposes of this Order, the Court has accepted as true the factual allegations alleged by CDIA in support of standing.  *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003); *see also White v. United States*, 601 F.3d 545, 551-52 (6th Cir. 2010) (applying pleading standard of *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) to allegations injury for purposes of standing).

implementing New Mexico-specific policies and procedures as well as possible liability to users of credit reports that do not contain information permitted or required by the Fair Credit Reporting Act; or (2) refusing to comply with the FCRISA, in which case they will be exposed to lawsuits asserting violations of the FCRISA. [Doc. 1 at 12-13] CDIA sought a declaration that FCRISA § 3(D) & (E) are preempted by provisions of the federal Fair Credit Reporting Act, and an injunction preventing FCRISA § 3(D) & (E) from becoming effective and prohibiting Defendant, Gary K. King in his official capacity as Attorney General of the State of New Mexico, from enforcing FCRISA § 3(D) & (E) against any of CDIA's members.  On May 18, 2010 the Court entered a temporary restraining order and on June 17, 2010, the Court entered an Agreed Amended Temporary Restraining Order. [Doc. 12] The Court entered an agreed order extending the TRO on August 17, 2010.

On March 9, 2011, the Court *sua sponte* raised what it viewed as substantial questions concerning the Court's  jurisdiction that had been overlooked by the parties. Specifically, the Court directed the parties to address the following questions:

1. Does the Court has the authority to prevent the New Mexico FCRISA from taking effect?

2. Has Plaintiff demonstrated that its alleged injury is redressable by an order enjoining defendant from enforcing the FCRISA?

**DISCUSSION**

In its response, CDIA concedes that the Court cannot enjoin the FCRISA from becoming effective and avers that it is not requesting such relief. [Doc. 45 at 3]  Thus, the issue before the

3

Court is whether, given that the FCRISA became effective on May 19, 2010, the Court can grant CDIA relief running against Defendant that will redress the alleged harm[2] to CDIA's members.

As our Court of Appeals has observed:

> [a]s an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a "case of controversy" that may be resolved by the federal courts. First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between that injury and the challenged action of the defendant--the injury must  be "fairly traceable" to the defendant, and not the result of the independent action of some third party.  Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury."

*Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154 Cir. 2005) (citations omitted).  The Court's OSC and this Order focus on the third element: redressability.

The FCRISA  does not provide for criminal sanctions, and unlike other New Mexico consumer protection legislation such as the Unfair Practices Act,  NMSA 1978, §§ 57-12-1, *et seq.*, the FCRISA does not authorize methods of enforcement that can be exercised only by the attorney general or other state officials.  *Compare* NMSA 1978, §§ 57-12-8, -9, -11, -12, -15.  The sole method of enforcement available to Defendant is a lawsuit pursuant to § 6 of the

---

[2]Standing is determined as of the time the action is brought.  *Nova Health Systems v. Gandy*,  416 F.3d 1149, 1154 (10th Cir. 2005). Since CDIA filed its complaint prior to the effective date of the FCRISA, its members  were not subject to suit under the FCRISA as of the time CDIA filed this action. *Nova Health Systems* strongly suggests that for purposes of Article III standing,  CDIA's members' exposure to future civil lawsuits "is too remote to constitute an actual or imminent injury in fact." *Id.* at 1155 n.6. More plausibly, harm to CDIA's members consisting of the anticipated unrecoverable costs of complying with the FCRISA may satisfy the requirement of an injury-in-fact.  *See Chamber of Commerce of the United States v. Edmondson*, 594 F.3d 742, 746 (10th Cir. 2010) (observing that challenged statute "imposes significant economic injuries in the form of implementation and training expenses").

FCRISA, in which the remedies available to Defendant are identical[3] to the remedies available to an affected consumer, who may sue in his or her own right. Thus, the FCRISA does not present the Court with a situation in which it may enjoin discrete enforcement activities committed solely to the attorney general or other state officials.

The dilemma that CDIA perceives its members are facing results from the civil enforcement provisions of the FCRISA providing for actual damages and civil penalties. Were it not for the threat of liability for damages and civil penalties, CDIA's members could refuse to comply with the FCRISA and wait until suit was brought to enforce the FCRISA through an injunction, § 56-3A-5(A), at which point they could raise the defense of federal preemption and obtain a determination of whether federal law has preempted the portions of the FCRISA to which CDIA and its members object. Thus, the redressability element of standing turns upon the extent to which an injunction running *solely against Defendant* will relieve CDIA's members from this perceived dilemma.

An injunction against Defendant cannot bind persons who are not before the Court. *Hope Clinic v. Ryan*, 249 F.3d 603, 605 (7th Cir. 2001) ("[A]n injunction prohibiting *the world* from filing private suits would be a flagrant violation of both Article III and the due process clause (for putative private plaintiffs are entitled to be notified and heard before courts adjudicate their entitlements)."). Accordingly, an injunction prohibiting Defendant from enforcing the FCRISA would not prevent affected consumers from bringing private FCRISA lawsuits. Plaintiff appears

---

[3]The Court is not persuaded by CDIA's strained reading of § 6. [Doc. 45 at 6 ("no other litigant can bring a claim on behalf of the State of New Mexico to recover civil penalties of up to $2,000 per violation of subsection 3(D).")] On its face § 6 plainly authorizes affected consumers to sue for civil penalties. *See Nova Health Care*, 416 F.3d at 1156 n.7 ("Absent any narrowing construction that the [state] courts may ultimately provide, we follow the most literal reading of [the challenged statute]. . . .").

to concede this point. [Doc. 45 at 4] There is no FCRISA lawsuit seeking damages or civil penalties that could be brought by Defendant that could not also be brought by the affected consumer; and, conversely, there is no damages remedy or civil penalty available to Defendant that is not also available to an affected consumer.  Considering that the FCRISA provides for an award of costs and attorney's fees to a prevailing plaintiff in addition to damages and civil penalties, there is considerable incentive for private plaintiffs to resort to the remedies provided by the FCRISA.  An injunction that merely prohibits Defendant from enforcing the FCRISA, while leaving every affected consumer free to pursue a private lawsuit, appears unlikely to eliminate the dilemma faced by CDIA's members.  Even if the Court were to enjoin Defendant from enforcing the FCRISA, CDIA's members would still be facing "a multitude of other prospective litigants," *Nova Health Systems* at 1159, and the resultant pressure to comply with the FCRISA to forestall suits by these prospective plaintiffs.  The Court concludes that an injunction running against Defendant would not materially reduce the coercive effect of FCRISA § 6 (B) & (C) upon CDIA's members, and, therefore, that the allegations of CDIA's complaint fail to satisfy the redressability component of Article III standing.

     CDIA's lack of standing is not cured by its request for declaratory relief.  "[I]t must be the effect of the court's judgment on the defendant that redresses the plaintiff's injury, whether directly or indirectly." *Nova Health Systems*, 416 F.3d at 1159. "State courts are not bound by the dictates of the *lower* federal courts . . . ." *Evans v. Thompson*, 518 F.3d 1, 8 (1st. Cir. 2008). Speculation that consumers who are not parties to this lawsuit, and therefore not bound by a declaratory judgment against Defendant, might be deterred from bringing lawsuits by a declaration in this case that federal law has pre-empted the FCRISA does not satisfy the

redressability requirement of constitutional standing. *Id.* (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J. concurring));

      **IT IS THEREFORE HEREBY ORDERED** that the temporary injunction entered in this action is **dissolved** and that the complaint and this action are **dismissed** for want of jurisdiction.

      So ordered this 24TH day of March, 2011.

      _____
      HONORABLE M. CHRISTINA ARMIJO
      United States District Judge